```
        IN THE UNITED STATES DISTRICT COURT
      FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

                       CHARLESTON
```

**CAROL MARSHALL,**

     **Plaintiff,**

**v.**                                          **CASE NO. 2:05-cv-00951**

**JO ANNE BARNHART,**
**Commissioner of Social Security,**

     **Defendant.**

## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case is presently pending before the court on Plaintiff's Motion for Summary Judgment and Defendant's Brief in Support of Judgment on the Pleadings. Both parties have consented in writing to a decision by the United States Magistrate Judge.

Plaintiff, Carol Marshall (hereinafter referred to as "Claimant"), protectively filed an application for DIB on April 12, 2004, alleging disability as of March 26, 2004, due to back impairments. (Tr. at 76-78, 95.) The claim was denied initially and upon reconsideration. (Tr. at 58-62, 64-66.) On September 29, 2004, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 67.) The hearing was held on January 31,

2005, before the Honorable John Murdock. (Tr. at 30-55.) By decision dated August 24, 2005, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 19-25.) The ALJ's decision became the final decision of the Commissioner on January 20, 2006, when the Appeals Council considered additional evidence from the Claimant and determined it did not provide a basis for changing the ALJ's decision. (Tr. at 6-10.) On June 15, 2006, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2005). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe

impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2005). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 20.) Under the second inquiry, the ALJ found that Claimant suffers

from the severe impairment of degenerative disc disease. (Tr. at 21.) At the third inquiry, the ALJ found that Claimant's impairment does not meet or equal the level of severity of any listing in Appendix 1. Id. The ALJ further found that Claimant has a residual functional capacity for light work. Id. Therefore, the ALJ answered the fourth query in the negative, finding that Claimant can return to her past relevant work as a bank teller. (Tr. at 24.) On this basis, benefits were denied. (Tr. at 24-25.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty

to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

Claimant's Background

Claimant was fifty-eight years old at the time of the administrative hearing. (Tr. at 34.) Claimant is a high school graduate. Id. In the past, she worked for ten years as a bank teller and fifteen years as a bank customer service representative. Id.

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it below.

On March 29, 2004, William Harris, M.D. examined Claimant, concluded she had bilateral leg pain and low back pain, and ordered an MRI to rule out spinal stenosis. (Tr. at 212.) An MRI of Claimant's lumbar spine was obtained on April 2, 2004. (Tr. at 258.) The MRI report prepared by Ronald E. Cordell, M.D., shows "mild generalized bulging of the L2-L3 and L3-L4 intervertebral discs," "focal bulging of the L5-S1 intervertebral disc to the left of the midline," but "no evidence of spinal stenosis." (Tr. at 258.)

Dr. Harris examined Claimant again on April 9, 2004, and May

5, 2004, and concluded that she had discogenic disease of the lumbar spine on each date. (Tr. at 211-12.) During the course of his treatment of Claimant, Dr. Harris prescribed pain medications, muscle relaxers, and anti-inflammatories. (Tr. at 209, 211-12, 243.) He also referred her for physical therapy, which she discontinued because she claimed it was too painful. (Tr. at 211, 243.)

Marcel G. Lambrechts, M.D., a State agency medical source, completed a Physical Residual Functional Capacity Assessment on June 17, 2004, and opined that Claimant can occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk for about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday. (Tr. at 164.)

On July 2, 2004, a State agency medical source, Rosemary L. Smith, Psy. D., completed a Psychiatric Review Technique form on which she opined that Claimant had no medically determinable mental impairment. (Tr. at 186-99.)

Matthew P. Walker, M.D. conducted a consultative evaluation of Claimant on July 16, 2004, and his examination notes state:

> She was able to toe and heel walk without difficulty. ROM of the L-spine was full with minimal discomfort. No pain to palpation of the L-spine. Isolated strength testing of the lower extremities revealed her strength to be 5/5 . . . . ROM of the hips, knees and ankles was full and painless.

(Tr. at 176.) In a letter written to Dr. Harris that day, Dr.

6

Walker opined that "[a]fter examining Ms. Marshall and reviewing her imaging studies, she does have evidence of diffuse degenerative disc disease with lumbar spondylosis, causing a degenerative scoliosis in the lumbar spine.  She also has a moderate amount of spinal stenosis at L3-4."  (Tr. at 175.)  Dr. Harris examined Claimant later the same day and concluded she had discogenic disease with significant osteoarthritis to the lumbar spine.  (Tr. at 209.)  By letter dated July 28, 2004, Dr. Harris opined that Claimant would be "unable to work for a period of twelve months or longer due to discogenic disease of the lumbar spine."  (Tr. at 210.)

Rafael Gomez, M.D., a State agency medical source, completed a second Physical Residual Functional Capacity Assessment on August 27, 2004.  (Tr. at 183.)  According to Dr. Gomez, Claimant "does not meet or equal the listing" and is "reduced to sedentary work."  Id.  Dr. Gomez also opined that Claimant should never climb ropes, ladders and scaffolds, balance or crawl.  (Tr. at 179.)

On September 14, 2004, Dr. Harris examined Claimant and reiterated his diagnosis of discogenic disease of the lumbar spine. (Tr. at 209.)

On March 16, 2005, following the administrative hearing at which the ALJ indicated he would order a consultative examination, Miraflor G. Khorshad, M.D. examined Claimant at the request of the State disability determination service.  (Tr. at 54, 248.)

According to Dr. Khorshad's report, Claimant "is able to do the heel to toe maneuver. She is able to sit and squat. Upper extremity muscle strength is 4/5 bilaterally. Right lower extremity muscle strength is 4/5 while left lower extremity muscle strength is 3/5." (Tr. at 249.) Dr. Khorshad noted that Claimant's rheumatoid factor was positive in September 2004. (Tr. at 250.) Dr. Khorshad diagnosed pyriformis tendinitis, left hip, discogenic back pain and clinical history, hypertension. Id. He suggested another MRI to rule out spinal stenosis. (Tr. at 251.)

Dr. Khorshad completed a Medical Source Statement of Ability to do Work-Related Activities (Physical) and opined that Claimant's ability to lift/carry and stand and/or walk are not affected by her impairments, but that she would need to periodically alternate sitting and standing to relieve pain and discomfort. In addition, pushing and/or pulling are affected by her back impairment. Finally, Claimant should never balance, kneel, crouch, crawl or stoop. (Tr. at 254-57.)

A second MRI of Claimant's lumbar spine, obtained on April 27, 2005, was read by John Anton, M.D. (Tr. at 265.) Dr. Anton's conclusions were as follows:

> 1. There has been progression of loss of height at the 2-3 disc space level. There is greater left lateral disc bulge with narrowing of the left neural foramina noted.
>
> 2. At the L3-4 disc space level, there is diffuse disc bulge asymmetric on the left as well with narrowing of the left neural foramina of mild severity present, similar to prior study.

    3.    Minimal diffuse disc bulge at L4.

    4.    At the L5-S1 disc space level, there is a small left paracentral focal disc protrusion with associated diffuse disc bulge identified unchanged from previous study.

(Tr. at 266.)

On June 16, 2005, Dr. Walker conducted another consultative examination of Claimant. Based on that exam and his review of her imaging studies, Dr. Walker opined that Claimant "has multi-level lumbar degenerative disc disease with multi-level facet arthrosis," and "also has multiple areas of subarticular stenosis." (Tr. at 268.) Dr. Walker felt it was unlikely surgical intervention would be successful and instead, recommended injections. Id.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ erred in his pain and credibility findings; (2) the ALJ failed to give proper weight to the treating physician opinion; and (3) the ALJ failed to consider Claimant's impairments in combination. (Pl.'s Br. at 14-18.)

The Commissioner argues that (1) substantial evidence supports the ALJ's finding that Claimant was not fully credible; (2) substantial evidence supports the ALJ's evaluation of the evidence, including Claimant's pain complaints; (3) substantial evidence supports the ALJ's evaluation of the medical evidence, including the treating physician opinion; and (4) the ALJ considered all of

Claimant's impairments in combination. (Def.'s Br. at 9-17.)

The court finds that the ALJ's decision is not supported by substantial evidence because the ALJ did not fully consider all the medical evidence of record or explain his findings related thereto.

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. § 404.1527(d) (2005). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. § 404.1527(d)(2).

Under § 404.1527(d)(1), more weight is given to an examiner than to a non-examiner. Section 404.1527(d)(2) provides that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Section 404.1527(d)(2)(i) states that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under § 404.1527(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion,

the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty).

At the administrative hearing in January of 2005, the ALJ indicated the need for Claimant to undergo a consultative physical examination. To that end, Dr. Khorshad examined Claimant on March 16, 2005, and Claimant underwent another MRI in April of 2005. (Tr. at 248-53, 265-66.) Notably, Dr. Khorshad completed a Medical Source Statement of Ability to do Work-Related Activities (Physical) on which he opined that Claimant would need to periodically alternate sitting and standing to relieve pain and discomfort and that pushing and pulling were affected by her back impairment. (Tr. at 254-57.) In addition, the MRI indicated the degree of neural foraminal stenosis had worsened slightly when compared to the prior study. (Tr. at 265.) Despite these findings and the opinion of at least one of the State agency medical sources (Dr. Gomez, who completed a Physical Residual Functional Capacity Assessment on August 27, 2004, and opined that Claimant was limited to sedentary work and should never engage in certain postural maneuvers), the ALJ concluded that Claimant was limited to light work, with no nonexertional limitations. As a result, the ALJ concluded that Claimant could return to her previous work as a bank teller.

In his decision, the ALJ did not specifically refer to the Medical Source Statement of Ability to do Work-Related Activities (Physical) completed by Dr. Khorshad or explain the weight afforded thereto.  Nor did the ALJ acknowledge Claimant's second MRI or the fact that Claimant's condition had worsened slightly.  The ALJ briefly stated that he considered the opinions of the state agency physicians and found them to be "significant, but not controlling," but did not otherwise mention their content including the opinion of Dr. Gomez that Claimant was limited to sedentary work.  (Tr. at 22.)

In the absence of some acknowledgment and explanation regarding the weight afforded the above evidence, the court cannot conclude that the ALJ's decision is supported by substantial evidence.  Without an explanation regarding the weight afforded this evidence, the ALJ's decision rejecting the opinion of Claimant's treating physician, Dr. Harris, also is brought into question.

Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Summary Judgment is **GRANTED** to the extent Claimant seeks remand pursuant to sentence four of 42 U.S.C. § 405(g) and otherwise **DENIED**, the final decision of the Commissioner is **REVERSED** and **REMANDED** and this matter is **DISMISSED** from the docket of this court.

The Clerk of this court is directed to provide copies of this Memorandum Opinion to all counsel of record.

ENTER: January 9, 2007.

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge